PRESENT: All the Justices

PATRICK LEE CHERRIE, ADMINISTRATOR
OF THE ESTATE OF GERDA A. HARVEY,
DECEASED, ET AL.

                                                OPINION BY
v. Record No. 151758                     JUSTICE D. ARTHUR KELSEY
                                                 July 14, 2016

VIRGINIA HEALTH SERVICES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

The circuit court dismissed declaratory judgment complaints filed by two decedents' estates seeking to assert a private right of action for the production of documents under 12 VAC § 5-371-140(G). After consolidating these cases, the court held that the regulation did not require the production of documents requested by the estates and, on that basis, dismissed both complaints. We affirm but for a different reason. The governing statute does not imply a private right of action for the enforcement of this regulation, and thus, the estates' claims cannot be enforced in a declaratory judgment action.

I.

The Virginia Board of Health regulates certain medical facilities in the Commonwealth, including "[n]ursing home[s]" as defined by Code § 32.1-123. See 12 VAC § 5-371-10 (defining "[n]ursing facility" as "any nursing home as defined in § 32.1-123 of the Code of Virginia"). One condition of licensure requires nursing homes to have "written policies and procedures" and to make these "policies . . . available for review, upon request, to residents and their designated representatives." 12 VAC § 5-371-140(A), (G).

By statute and regulation, the Board may enforce this requirement through the imposition of "administrative sanctions," which could include, among other things, petitioning a court to

"impose a civil penalty" and "[r]evoking or suspending" the nursing home's license. Id. § 5-371-90(A), (B)(2)-(3); see also Code § 32.1-135(A). Under Code § 32.1-24, individual "case decisions" are then subject to the Administrative Process Act, Code §§ 2.2-4000 to 2.2-4031. In addition, the State Health Commissioner may "initiate court proceedings" against non-compliant nursing homes, Code § 32.1-127.01, in the event that administrative remedies do not produce compliance.

In this consolidated case, the complaints alleged that Gerda A. Harvey and James Clifton Davis, Jr. were residents for brief periods at two different nursing homes operated by Virginia Health Services, Inc. After their deaths, their executors asked the nursing homes to provide copies of all written policies and procedures in effect during the decedents' stays. J.A. at 5, 12. When the nursing homes refused, the executors of both estates filed declaratory judgment actions seeking an order of "specific performance" compelling the nursing homes to provide the requested documents. Id. at 3, 10.

The circuit court dismissed the case, holding that only current residents, not former residents, could bring an enforcement action under 12 VAC § 5-371-140(G). The estates appeal, arguing that the better interpretation of this regulation is that it authorizes current and former residents of nursing homes to bring a private right of action.

II.

We see no need to referee the dispute between the circuit court and the estates on whether to interpret 12 VAC § 5-371-140(G) narrowly or broadly. We thus do not address whether the term "residents" in this regulation encompasses former as well as current residents. That dispute presupposes that the governing statutes authorize parties other than the Commissioner to bring a

2

regulatory enforcement action in circuit court. We hold that the statutes do not authorize a private right of action to enforce 12 VAC § 5-371-140(G).

## A.

In Virginia, "substantive law" determines whether a private claimant has a right to bring a judicial action. Kiser v. A.W. Chesterton Co., 285 Va. 12, 21, 736 S.E.2d 910, 915 (2013) (quoting Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 323, 326 (1989)). Substantive law includes the Constitution of Virginia, laws enacted by the General Assembly, and historic common-law principles recognized by our courts. A "*right of action*" is a legally recognized "remedial right" to "enforce a *cause of action*," which is simply the "set of operative facts" that causes a claimant to assert his claim. Id. (emphasis added); see also Black's Law Dictionary 266, 1520 (10th ed. 2014) (defining "cause of action" as a "group of operative facts giving rise to one or more bases for suing" and "right of action" as the "right to bring a specific case to court"). The distinction between a *right* of action and a *cause* of action should not be dismissed as an odd, rhetorical anachronism. It factors into many modern legal doctrines, including res judicata, accrual for statute-of-limitations purposes, and, pertinent here, a party's right to seek judicial remedies.

In this case, the estates claim they have asserted a viable cause of action. In their view, the "cause" of their civil action is obvious: The nursing homes will not produce the requested documents, and the regulation requires them to do so. While that may or may not be true, it does not answer the threshold question of whether "substantive law" gives the estates the legal "right" to seek judicial enforcement of their claimed cause of action. Roller, 238 Va. at 327, 384 S.E.2d at 326.

3

The claimed right here does not implicate any protected right under the Constitution of Virginia, nor do the estates assert any historically recognized common-law right of action to compel the production of the policies and procedures. The existence of any viable right of action, therefore, must come from statutory law. Sometimes called "statutory standing," this inquiry asks "whether the plaintiff 'is a member of the class given authority by a statute to bring suit.'" Small v. Federal Nat'l Mortg. Ass'n, 286 Va. 119, 125, 747 S.E.2d 817, 820 (2013) (citation omitted). In other words, the question is whether the legislature "accorded *this* injured plaintiff the right to sue the defendant to redress his injury." Id. (citation omitted and emphasis in original).

It simply is not enough that the plaintiff has "a personal stake in the outcome of the controversy," id. at 126, 747 S.E.2d at 820 (quoting Goldman v. Landsidle, 262 Va. 364, 371, 552 S.E.2d 67, 71 (2001)), or that "the plaintiff's 'rights will be affected by the disposition of the case,'" id. (quoting Livingston v. Virginia Dep't of Transp., 284 Va. 140, 154, 726 S.E.2d 264, 272 (2012)). "Rather, the plaintiff must possess the 'legal right' to bring the action, which depends on the provisions of the relevant statute." Id.; see also Concerned Taxpayers of Brunswick Cty. v. County of Brunswick, 249 Va. 320, 330, 455 S.E.2d 712, 717-18 (1995) ("When a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." (alteration and citation omitted)).

A statutory right of action no doubt exists when a statute expressly authorizes it. There are dozens of examples of this in the Code of Virginia. When a statute is silent, however, we have no authority to infer a statutory private right of action without demonstrable evidence that the statutory scheme necessarily implies it. Small, 286 Va. at 132, 747 S.E.2d at 824; Shilling v. Jimenez, 268 Va. 202, 208, 597 S.E.2d 206, 210 (2004); see also Vansant & Gusler, Inc. v.

4

Washington, 245 Va. 356, 359-60, 429 S.E.2d 31, 33 (1993). The necessity for such an implication must be palpable. We would never infer a "private right of action" based solely on a bare allegation of a statutory violation. Vansant & Gusler, Inc., 245 Va. at 359-60, 429 S.E.2d at 33. For similar reasons, we do not infer a private right of action when the General Assembly expressly provides for a different method of judicial enforcement. "One of the basic principles of statutory construction is that where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." School Bd. of Norfolk v. Giannoutsos, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989); see also Small, 286 Va. at 127-28, 747 S.E.2d at 821; First Am. Title Ins. v. Western Sur. Co., 283 Va. 389, 397, 722 S.E.2d 637, 640 (2012).

B.

Title 32.1, chapter 5, of the Code of Virginia imposes various obligations on licensed nursing homes and authorizes the Board of Health to promulgate regulations consistent with its statutory mandate. See generally Code §§ 32.1-123 to 32.1-137.04, 32.1-138 to 32.1-138.5.[1] Nothing in title 32.1, chapter 5, however, authorizes a private party to bring a civil action to enforce regulations of the Board of Health. To the contrary, the governing statutes and regulations recognize only two methods of enforcing the Board's regulations: (i) administrative sanctions and adjudications subject to the Virginia Administrative Process Act and (ii) civil enforcement actions filed by the Commissioner in circuit court. See Code §§ 32.1-24, 32.1-27(B), 32.1-27.1(B), 32.1-127.01; 12 VAC § 5-371-90(B) (authorizing the Commissioner to "take such actions as are appropriate").

---

[1] See, e.g., Code § 32.1-127 (setting forth standards to govern the "regulations promulgated by the Board to carry out the provisions of this article").

Private parties nevertheless play a role in this process. The regulations expressly grant interested parties the opportunity to file administrative complaints against a licensed nursing home. See 12 VAC § 5-371-70(B). Through its Office of Licensure and Certification, the Department of Health has the responsibility "to investigate any complaints regarding alleged violations of the standards or statutes and complaints of the abuse or neglect of persons in care," id. § 5-371-70(A), and to notify the complainant of the "findings of the investigation," id. § 5-371-70(C). The regulations obligate a nursing home under investigation to "submit an acceptable plan of correcting any deficiencies found during a complaint investigation," id. § 5-371-70(D), and to assure the Department that any "plan of correction is implemented and monitored so that compliance is maintained," id. § 5-371-70(F).

We find in this statutory scheme multiple methods of enforcing the nursing homes' regulatory duties, including the document-production requirement of 12 VAC § 5-371-140(G). What we do not find is any clear statutory language expressly authorizing or implying that private parties can file a civil action in circuit court to enforce the regulation outside the administrative process. We thus conclude that no such right of action exists.

C.

The estates next turn to the Declaratory Judgment Act, Code § 8.01-184 to Code § 8.01-191, as the statutory vehicle to give them a private right of action to enforce 12 VAC § 5-371-140(G). Again, their logic is straightforward: (i) The statute authorizes the Board's regulations; (ii) one of those regulations gives them a right to the requested documents; (iii) the Declaratory Judgment Act authorizes a court to "declare" that they have that right; and (iv) on remand, the trial court should follow up that declaration with an order compelling specific performance. See Appellant's Br. at 25 (addressing the requested remedy).

6

This simple syllogism, however, proves too much. If it were true, the Declaratory Judgment Act would operate as a roving statutory private right of action for anyone claiming to be injured by someone else's violation of any statute. The very concept of statutory standing, under this view, would no longer exist. Indeed, any aggrieved claimant, by virtue of claiming that his grievance involves a statutory violation, would have standing to assert a private right of action in court — not because the allegedly violated statute grants the right, but because the Declaratory Judgment Act grants the right for all statutes.

This understanding of the Declaratory Judgment Act is wholly out of sync with the traditional view of the Act's purpose and function. "The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature." Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cty. Bd. of Supervisors, 285 Va. 87, 99, 737 S.E.2d 1, 7 (2013) (quoting Liberty Mut. Ins. v. Bishop, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970)); see also 2 Charles E. Friend & Kent Sinclair, Virginia Pleading and Practice § 30.02, at 30-3 (2d ed. 2007). "The declaratory judgment acts do not create or change any substantive rights," Charlottesville Area Fitness Club Operators Ass'n, 285 Va. at 99, 737 S.E.2d at 7 (internal quotation marks and citation omitted), or "bring any other additional rights into being," Miller v. Highland Cty., 274 Va. 355, 370, 650 S.E.2d 532, 539 (2007).[2]

---

[2] After those rights fully mature, thus ripening the cause of action, the Declaratory Judgment Act plays no role in adjudicating the dispute. As we have often said, "[W]here claims and rights asserted have fully matured, and the alleged wrongs have already been suffered, a declaratory judgment proceeding, which is intended to permit the declaration of rights before they mature, is not an available remedy." Board of Supervisors of Prince William Cty. v. Hylton Enters., Inc., 216 Va. 582, 585, 221 S.E.2d 534, 537 (1976); see also Liberty Mut. Ins., 211 Va. at 421, 177 S.E.2d at 524.

7

Thus, if a claimant has a private right of action under a statute, but the underlying facts have not ripened into a fully enforceable cause of action, the Declaratory Judgment Act provides a procedural remedy for the unripe, but legally viable, cause of action. But the Act does not *create* a right of action or, for that matter, any substantive rights at all: "The declaratory judgment acts do not create or change any substantive rights, or bring into being or modify any relationships, or alter the character of controversies, which are the subject of judicial power." Liberty Mut. Ins., 211 Va. at 419, 177 S.E.2d at 522 (citation omitted); 2 Friend & Sinclair, supra, § 30.03, at 30-4.[3] Like the United States Supreme Court, we "have long considered 'the operation of the Declaratory Judgment Act' to be only 'procedural,' leaving 'substantive rights unchanged.'" Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S.___, ___, 134 S. Ct. 843, 849 (2014) (citations omitted).

It necessarily follows from these limiting principles that the estates cannot use the Declaratory Judgment Act as a platform for asserting non-existent private rights of action to enforce an administrative regulation promulgated by the Board of Health. The circuit court did not dismiss this case on this ground, but we have the authority to affirm the court's dismissal on any legal ground appearing in the record. This stems "from the axiom that a 'prevailing party seeks to enforce not a trial court's reasoning, but the court's *judgment*.'" Alexandria Redevelopment & Hous. Auth. v. Walker, 290 Va. 150, 156 n.1, 772 S.E.2d 297, 300 n.1 (2015) (alteration omitted and emphasis in original) (quoting Jennings v. Stephens, 574 U.S. ___, ___, 135 S. Ct. 793, 799 (2015)); see Perry v. Commonwealth, 280 Va. 572, 581-82, 701 S.E.2d 431, 436-37 (2010); Whitehead v. Commonwealth, 278 Va. 105, 115, 677 S.E.2d 265, 270 (2009).

_____

[3] This case does not involve a defensive use of a declaratory judgment action. See, e.g., Board of Supervisors of Fairfax Cty. v. Thompson Assocs., 240 Va. 133, 139, 393 S.E.2d 201, 204-05 (1990) (noting that the plaintiff "was not using the declaratory judgment count solely in a defensive posture, but was seeking . . . affirmative relief").

III.

In sum, we pass no judgment on the circuit court's interpretation of 12 VAC § 5-371-140(G) or its conclusion that the nursing homes did not violate that regulation. We nonetheless affirm the court's dismissal of the declaratory judgment complaints because the governing statutes do not authorize a private right of action, and thus, the estates' claims cannot be enforced in this declaratory judgment action.

<u>Affirmed.</u>